UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

GEM FINANCIAL SERVICE, INC., d/b/a GEM
PAWNBROKERS,

                    Plaintiff,

          v.

CITY OF NEW YORK, and POLICE OFFICERS
JOHN DOE # 1–10,

                 Defendants.

-----------------------------------------------------------------

**<u>MEMORANDUM & ORDER</u>**
13-CV-1686 (MKB)

MARGO K. BRODIE, United States District Judge:

       Plaintiff Gem Financial Service, Inc., doing business as Gem Pawnbrokers, and former

Plaintiff Mitchell Kaminsky commenced the above-captioned action against Defendants the City

of New York ("City"), the New York City Police Department ("NYPD") and Police Officers

John Doe # 1–10, alleging unlawful search and seizure, malicious prosecution, arbitrary

treatment as a class of one in violation of the Fourth and Fourteenth Amendments, and municipal

liability.  Plaintiff and former Plaintiff Kaminsky also alleged claims under the New York State

Constitution, the New York Civil Rights Law ("NYCRL") and New York State common law for

malicious prosecution and tortious interference.  Defendants moved to dismiss the Complaint on

July 12, 2013.  (Docket Entry 10.)  At oral argument on March 6, 2014, the Court dismissed

Plaintiff Mitchel Kaminsky from the action and dismissed all claims against the NYPD.   By

Memorandum and Order dated March 17, 2014, ("March 17, 2014 M&O"), the Court granted in

part and denied in part Defendants' motion to dismiss.  (March 17, 2014 M&O, Docket Entry

21.)  The Court granted Defendants' motion to dismiss Gem Financial Services, Inc.'s ("Gem")

class of one Equal Protection claim, federal malicious prosecution claim, NYCRL claim, and

tortious interference claim.  (*Id*.)  The Court denied Defendants' motion to dismiss Plaintiff's

Fourth Amendment claim, state law malicious prosecution claim, municipal liability claim, and

request for equitable relief.  (*Id*.)  Plaintiff was granted leave to file an amended complaint, and

on May 2, 2014, Plaintiff filed an Amended Complaint, adding Keith Watts[1] as a Plaintiff.  In

addition to its Fourth Amendment claim, state malicious prosecution and municipal liability

claims, Plaintiff also alleges a selective enforcement claim in violation of the Equal Protection

Clause.  (*See generally* Am. Compl., Docket Entry 25.)  Defendants now move for

reconsideration of the Court's March 17, 2014 M&O as it pertains to Plaintiff's Fourth

Amendment and state malicious prosecution claims.  Defendants also move to dismiss Plaintiff's

selective treatment equal protection claim and the malicious prosecution claim asserted by Watts.

(Def. Notice of Mot. for Reconsideration and to Dismiss ("Def. Mot.") 1, Docket Entry 37.)  For

the reasons set forth below, the Court denies Defendants' motion for reconsideration and their

motion to dismiss.

## I.     Background

The Court assumes familiarity with the underlying facts of this case as set forth in the

Court's March 17, 2014 M&O.  *See Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686,

2014 WL 1010408 (E.D.N.Y. Mar. 17, 2014).  The facts necessary to decide the motion before

the Court are outlined below.

---

[1] Defendants state in their memorandum that, "as acknowledged by counsel for Gem, Paul Solda, Keith Watts died on April 18, 2014 . . . and thus prior to the filing of the Amended Complaint."  (Def. Mem. in Support of Mot. for Reconsideration and to Dismiss ("Def. Mem.") 3 n.3, Docket Entry No. 39; *see also* Def. Letter dated July 31, 2014 1, Docket Entry No. 35.) Additionally, on July 31, 2014, Plaintiff's attorney, Paul J. Solda filed a letter with the Court, withdrawing Mr. Watts' cause of action in the Amended Complaint.  (Pl. Letter dated July 30, 2014 1, Docket Entry 34.)  Thus, the Court dismisses all claims by Watts as withdrawn.

Plaintiff Gem is a collateral loan broker and secondhand dealer, duly licensed by the New York City Department of Consumer Affairs.[2]  (Am. Compl. ¶ 10.)  Gem operates more than twenty separate retail stores in New York City.  (*Id.* ¶ 11.)  Beginning in the summer of 2011, the NYPD began visiting Gem's regional stores and making "obtrusive demands" in an effort to convince Gem to use "Leads Online," a reporting system that automatically posts all transactions undertaken by a particular business on a national database viewable by law enforcement.  (*Id.* ¶¶ 12–13.)  The City and the NYPD have adopted a practice to single out pawn brokers who choose not to utilize Leads Online, (*id.* ¶ 28), and the NYPD has subjected Gem to "threats, intimidation and illegal disruptive actions" due to its refusal to use Leads Online, (*id.* ¶ 29).

In addition to thirteen[3] specific incidents, Plaintiffs also allege that on a number of other occasions between the summer of 2011 and 2013, the NYPD maintained a constant presence at Gem's various stores and investigated random transactions.  (*Id.* ¶ 130.)  On many of these occasions, the NYPD demanded collateral jewelry without a warrant or any other legal right.  (*Id.* ¶ 131.)  In addition, the NYPD would demand that Gem place "criminal holds" on certain collateral jewelry, without any legal basis, thereby preventing Gem from utilizing said jewelry during the ordinary course of business.  (*Id.*)

---

[2]  In reviewing Plaintiff's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all of the factual allegations in the Amended Complaint as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Vill. of Willowbrook v. Oleck*, 529 U.S. 562 (2000); *see also Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).

[3]  In Plaintiff's original complaint, it listed seven specific incidences of the NYPD entering Plaintiff's various store locations.  In addition to these seven incidences, the Amended Complaint lists an additional six incidences, which occurred on November 16, 2011, (Am. Compl. ¶ 49), November 18, 2011, (*id.* ¶ 58 ), February 9, 2012 (*id.* ¶ 67), March 10, 2012, (*id.* ¶ 71), September 6, 2012, (*id.* ¶ 108) and September 8, 2012, (*id.* ¶ 116).

### a. The regulatory scheme governing warrantless searches

As discussed in the Court's March 17, 2014 M&O, collateral loan brokers and secondhand dealers in New York City operate under a regulatory framework that includes several provisions of the New York State General Business Law, the New York City Charter, the New York City Code and the Rules and Regulations of the City of New York. *Gem Fin. Serv.*, 2014 WL 1010408, at *3. The Court will not repeat that information here.

In addition, the parties rely on a memorandum entitled "Guidelines for the Inspection of Pawnbroker and Second-hand Dealers Businesses," issued in 1998 by then-NYPD Deputy Commissioner for Legal Matters George A. Grasso. ("Grasso Memo," annexed to the Am. Compl. as Ex. A.) The Grasso Memo discusses the various laws governing pawnbrokers and secondhand dealers and establishes guidelines "in order to insure that the administrative searches . . . conducted by this Department survive constitutional challenge . . . ." (*Id.* at 2.) The Grasso Memo advises officers, *inter alia*, to visit stores during regular business hours and request to inspect required books and records. (*Id.* at 5.) The Grasso Memo further advises that if an officer develops probable cause to believe that criminal activity is afoot during an inspection, the premises "should be secured and a search warrant obtained before a search of the premises is commenced." (*Id.*) Finally, the Grasso Memo reiterates that an officer may seize property only if "its evidentiary or contraband nature" is apparent and the property is in plain view. (*Id.*)

## II. Discussion

### a. Standard of review

#### i. Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Local Civ. R. 6.3 (The moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."); *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013). It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended*, (July 13, 2012). In other words, "[r]econsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Hidalgo v. New York*, No. 11-CV-5074, 2012 WL 3598878, at *1 (E.D.N.Y. Aug. 20, 2012) (citation and internal quotation marks omitted). A motion for reconsideration "should not be used as a vehicle simply to voice disagreement with the Court's decision, . . . nor does it present 'an occasion for repeating old arguments previously rejected or an opportunity for making new arguments that could have previously been made.'" *Premium Sports Inc. v. Connell*, No. 10-CV-3753, 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (citations omitted). Moreover, "a party may not, on a motion for reconsideration, raise an argument for the first time." *Image Processing Tech.,*

*LLC v. Canon Inc.*, No. 10-CV-3867, 2012 WL 253097, at *1 (E.D.N.Y. Jan. 26, 2012) (alteration, citation and internal quotation marks omitted) (collecting cases).

In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters *that were put before the Court on the underlying motion*." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (emphasis added) (citations and internal quotation marks omitted); *see also Henderson v. City of New York*, No. 05-CV-2588, 2011 WL 5513228, at *1 (E.D.N.Y. Nov. 10, 2011) ("In order to have been 'overlooked,' the decisions or data in question must have been put before [the court] on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." (citations and internal quotation marks omitted)); *cf. Stoner v. Young Concert Artists, Inc.*, No. 11-CV-7279, 2013 WL 2425137, at *1 (S.D.N.Y. May 20, 2013) ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because a party is dissatisfied with the outcome of his case.  To do otherwise would be a waste of judicial resources."  (alteration, citations and internal quotation marks omitted)).

### ii.    Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must take all of the factual allegations in the complaint as true." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see also Pension Ben. Guar. Corp.*, 712 F.3d at 717–18. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### b. Defendants are not entitled to reconsideration

Defendants move for reconsideration of the Court's March 17, 2014 M&O as it pertains to Plaintiff's Fourth Amendment and state malicious prosecution claims. For the reasons set forth below, the Court denies Defendants' motion for reconsideration as to both the Fourth Amendment and state malicious prosecution claims.

### i. Fourth Amendment claim

In its March 17, 2014 M&O, the Court denied Defendants' motion to dismiss Plaintiff's Fourth Amendment claim as to the warrantless search and seizure of collateral jewelry, finding that Plaintiff had "satisfactorily pleaded factual allegations to state a claim that Gem stores were searched outside the 'specific inspections . . . for specific purposes'" of New York City Charter Section 436, which governs the police's search power in regards to the regulation of pawn brokers. *Gem Fin. Serv., Inc.*, 2014 WL 1010408 at * 8. In support of their motion for reconsideration, Defendants argue their actions satisfied the criteria for warrantless administrative inspections, as outlined in *New York v. Burger*, 482 U.S. 691 (1987), rendering

their actions within the bounds of the Fourth Amendment. Defendants urge that under the decision in *Burger*, "neither administrative inspection nor actions taken based on discoveries made during administrative inspections give rise to a Fourth Amendment claim where, as here, the inspection is pursuant to a regulatory scheme that satisfies the three criteria for a warrantless administrative search," and, therefore, "the *Burger* criteria for warrantless administrative inspections are [ ] satisfied here." (Def. Mem. 8, 11.) Defendants further argue that "pursuant to *Burger*, where the three criteria for a warrantless search are met, the actions taken in response to what is discovered in the course of the inspections do not give rise to a Fourth Amendment claim based on the absence of a warrant," and, "consistent with *Burger*, neither the placement of a hold nor the seizure of collateral property based on evidence that it was stolen give rise to a Fourth Amendment claim based on the absence of a warrant." (*Id.* at14.) Therefore, Defendants argue that the Court should reconsider its decision with regards to Plaintiff's Fourth Amendment claim because "under *Burger*, neither the alleged demands by police officers for placement of . . . holds nor the actual taking of collateral property without a warrant or 'suitable judicial paperwork to legitimize their demands,' supports a Fourth Amendment claim." (*Id.* at 15 (quoting Am. Compl. ¶ 15.)).

The Defendants do not "bring[] to the Court's attention controlling authority or factual matters presented to the Court in the underlying motion and overlooked." *See Bueno v. Gill*, 237 F. Supp. 2d 447, 449 (S.D.N.Y. 2002). In its March 17, 2014 M&O, the Court considered *Burger* at length, cited to the *Burger* decision no fewer than six times, and concluded that "Plaintiff has satisfactorily pleaded factual allegations to state a claim that Gem stores were searched outside the 'specific inspections . . . for specific purposes' of § 436." *Gem Fin. Serv.*, 2014 WL 1010408, at *8 (citing *Burger*, 482 U.S. at 703). Furthermore, in their first motion to

dismiss made on July 12, 2013, Defendants also advanced the argument that under the *Burger* decision, regulated businesses can be properly subject to warrantless administrative searches. (Def. Mem. in Supp. of Mot. to Dismiss, Docket Entry No. 12.). As such, the Court did not *overlook* the *Burger* decision nor it's guidelines for determining Fourth Amendment violations. Therefore, Defendants' arguments that in the Court's analysis of the *Burger* decision, it should have instead found that Plaintiff has no Fourth Amendment claim, cannot serve as a basis for Defendants' motion for reconsideration, as the Court addressed *Burger*, and Defendants' arguments relating to *Burger*, in its March 17, 2014 M&O. *See Mir v. Shah*, 569 F. App'x 48, 50 (2d Cir. 2014) (stating that a motion for reconsideration will be denied "unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" (internal quotation marks and citations omitted)); *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. 05-CV-5155, 2010 WL 985201, at *1 (E.D.N.Y. Mar. 15, 2010) (same); *Bueno*, 237 F. Supp. 2d at 449 ("A motion for reconsideration is limited to bringing to the Court's attention controlling authority or factual matters presented to the Court in the underlying motion and overlooked."); *Stoner*, 2013 WL 2425137, at *1 (stating that a court will not reconsider issues already examined by a court "simply because a party is dissatisfied with the outcome").

Additionally, a motion for reconsideration may not be used by Defendants to expand upon their original arguments made regarding the proper application of the *Burger* decision. *See Lee v. Torres*, No. 11-CV-2659, 2013 WL 125925, at *1 (E.D.N.Y. Jan. 9, 2013) ("A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." (quoting *Montblanc–Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 147

(E.D.N.Y. 2010))); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4344202, at *1 (E.D.N.Y. Sept. 14, 2011) ("The law in this Circuit is clear: a party is not permitted to put forth new facts, issues or arguments that were not presented to the court on the original motion." (quoting *Cohen v. Federal Express Corp.*, No. 07-CV-1288, 2007 WL 1573918, at *4 (S.D.N.Y. May 24, 2007))); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, No. 00-CV-3613, 2004 WL 1943099, at *11 (S.D.N.Y. Aug. 27, 2004) ("The Court cannot overlook legal arguments it was not presented with in the motion papers . . . . It is well established that [a] motion for reconsideration is [also] not a vehicle for plugging the gaps of the lost motion with additional matters." (alterations in original) (quoting *Wechsler v. Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402, 410–11 (S.D.N.Y. 2002))). To the extent that Defendants seek to make new arguments regarding the application of *Burger*, a motion for reconsideration is not the appropriate vehicle for such arguments. For the foregoing reasons, Defendants' motion for reconsideration as to Plaintiff's Fourth Amendment claim is denied.

### ii. State malicious prosecution claim

In its March 17, 2014 M&O, the Court found that Plaintiff had stated a plausible claim for malicious prosecution under New York state law based on the September 19, 2012 summons[4] which the court determined terminated in Plaintiff's favor following what was ostensibly a dismissal on the merits. *Gem Fin. Serv.*, 2014 WL 1010408, at *11. Defendants argue for reconsideration as to Plaintiffs state malicious prosecution claim because, they allege, the

---

[4] While Plaintiff received a total of seven misdemeanor summonses from the NYPD, in its March 17, 2014 M&O, the Court found that Summons No. 433769774-3, issued on September 19, 2012, was the only summons upon which Plaintiff could base a state malicious prosecution claim. *Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686, 2014 WL 1010408, at *11 (E.D.N.Y. Mar. 17, 2014).

summons in question was not dismissed under circumstances indicating a favorable termination. (Def. Mem. 2.)  In support of the motion for reconsideration as to Plaintiff's state malicious prosecution claims, Defendants argue that Summons No. 433769774-3, issued on September 19, 2012, "was dismissed prior to trial, was not dismissed on the merits as the judge lacked authority to dismiss on the merits,"[5] and, therefore, "[t]he dismissal was [ ] not under circumstances indicating either a final or favorable termination and thus does not support a malicious prosecution claim."  (Def. Mem. 21.)  In further support of their argument, Defendants cite from the transcript of the hearing held on December 21, 2012, before Judge Raciti at the Criminal Court of the City of New York in Kews Gardens, New York, (Hrg. Tr. dated Dec. 21, 2012, annexed to Def. Mem. as Ex. K and annexed to Def. Mem. in Support of Mot. to Dismiss as Ex. L), at which the summons was dismissed, and argue that "[w]hile the basis for the dismissal was not specified by Judge Raciti, the grounds were limited to those specified in [New York Criminal Procedural Law] 170.30 and 170.35, and thus did not include dismissal on the merits . . . [m]oreover, the [P]laintiff cannot establish, as required to meet its burden, that the criminal action terminated in its favor."  (Def. Mem. 24–25.)  Thus, Defendants allege, "[Plaintiff's] state malicious prosecution claim fails as there is no basis to conclude that the dismissal of Summons No. 433769774-3 was a final or favorable termination, a prerequisite for a malicious prosecution claim."  (*Id*.)

Defendants fail to "bring[] to the Court's attention controlling authority or factual matters presented to the Court in the underlying motion and overlooked."  *Bueno*, 237 F. Supp. at 449.

---

[5]  In support of its argument that the summons was not dismissed on the merits, Defendants state that "grounds for dismissal prior to trial include, among others, facial insufficiency, the court's lack of jurisdiction, immunity, prior prosecution, denial of right to a speedy trial, and in the interest of justice, but do not include dismissal on the merits."  (Def. Mem. 21.)

In its March 17, 2014 M&O, the Court examined at length the requirements for what is considered to be a "termination in plaintiff's favor" as it applies to a claim of malicious prosecution. *Gem Fin. Serv.*, 2014 WL 1010408, at *10–11. In analyzing whether any of Plaintiff's summonses could be deemed to have terminated in Plaintiff's favor, the Court did review the transcript of the December 21, 2012 hearing before Judge Raciti at the Criminal Court of the City of New York, and determined that "the transcript[] from [the] hearing[] dated Dec. 21, 2012, reflect[s] that the merits were argued and that the court dismissed the summons[] because [Plaintiff] had actually complied with the law," and, therefore, the "September 19, 2012 summons[] . . . did terminate in [Plaintiff's] favor." *Gem Fin. Serv.*, 2014 WL 1010408, at *11. Furthermore, although Defendants raised the issue of the December 21, 2012 hearing in their July 12, 2013 motion to dismiss, arguing that the summons had not terminated in Plaintiff's favor, Defendants never raised the argument that the dismissal *could not* have been on the merits, as they do now. In their earlier motion to dismiss, Defendants never mentioned New York Criminal Procedure Law sections 170.30 or 170.35, and instead, Defendants simply stated, "[a]s the transcript reflects, the remaining [summons] issued to [Plaintiff], Summon No. 433769774-3, was dismissed without further proceedings beyond the summons . . . accordingly, the nature of the resolution of the summons[] also bars a malicious prosecution claim." (Def. Mem. in Support of Mot. to Dismiss 16–17.) Thus, Defendants' arguments cannot serve as a basis for a proper motion for reconsideration. *See Analytical Surveys, Inc.*, 684 F.3d at 52 (a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" (quoting *Sequa Corp.,* 156 F.3d at 144)); *Premium Sports Inc.*, 2012 WL 2878085, at *1 (a motion for reconsideration "should not be used as a vehicle simply to voice disagreement with

the Court's decision, . . . nor does it present 'an occasion for repeating old arguments previously rejected or an opportunity for making new arguments that could have previously been made.'" (citations omitted)); *see also Image Processing Tech.*, 2012 WL 253097, at *1 ( "[A] party may not, on a motion for reconsideration, raise an argument for the first time." (alteration, citation and internal quotation marks omitted)). For the foregoing reasons, the Court denies Defendants' motion for reconsideration as to Plaintiff's state malicious prosecution claim.

### c. Motion to dismiss

In addition to moving for reconsideration of the March 17, 2014 M&O, Defendants also move to dismiss Plaintiff's claim brought under the Equal Protection Clause, which Plaintiff reasserted in its Amended Complaint, and the malicious prosecution claim asserted by Watts.[6] In its Amended Complaint, Plaintiff alleges that Defendants violated its right to Equal Protection based on selective enforcement by treating Plaintiff differently "from other pawnbrokers and secondhand dealers" and did so "with malice and bad faith." (Am. Compl. ¶ 152.) Plaintiff further alleges that "the selective treatment was motivated by animus and meant to punish [Plaintiff] in retaliation for [its] refusal to cede to the NYPD's illegitimate demands," that is, the NYPD's requirement that Plaintiff use Leads Online, and Plaintiff was "intentionally treated differently from other pawnbrokers similarly situated, and there was no rational basis for the difference in treatment." (*Id.* ¶¶ 153, 155.) Plaintiff also asserts that "the NYPD refused to initiate larceny claims against certain customers of GEM — despite seizures of collateral based upon the NYPD's claim of [the] same being stolen." (*Id.* ¶ 157.) Defendants argue that Plaintiff

---

[6] As discussed *infra* note 1, Watts died on April 18, 2014, prior to the filing of the Amended claim and he has not been substituted in the action. Accordingly, Plaintiff's attorney has withdrawn the state malicious prosecution claim on behalf of Watts. (Pl. Letter dated July 31, 2014 1.)

fails to state an Equal Protection claim by failing to show that it is similarly situated to any identified comparator and by failing to show that "the alleged differing conduct [toward Plaintiffs] was the result of an improper purpose rather than a legitimate purpose." (Def. Mem. 18.) The Court finds that Plaintiff has stated a claim for violation of the Equal Protection Clause based on selective enforcement, and, therefore, denies Defendants' motion to dismiss.

To state an claim under Section 1983 for violations of the Equal Protection Clause based on selective enforcement, Plaintiff must show that (1) "compared with others similarly situated, [the plaintiff] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [the plaintiff]." *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 F. App'x 32, 35 (2d Cir. 2014) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)); *see Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) (noting that in order to satisfactorily state a selective enforcement claim, the Court must determine, based on the allegations in the operative complaint, whether it is plausible that a reasonable jury could ultimately conclude that Plaintiff is similarly situated to an alleged comparator).

"Generally, whether two entities are similarly situated is a factual issue that should be submitted to the jury." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790–91 (2d Cir. 2007); *see Massi v. Flynn*, 254 F. App'x 84, 86 (2d Cir. 2007) ("whether [people] are similarly situated is [generally] a factual issue that should be submitted to the jury." (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001)); *see also Graham v. Long Island R.R.* F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury."). However, the rule is not absolute. When determining

if a plaintiff has shown, or failed to show, that it is similarly situated to a comparator as a matter of law, there is disagreement within this Circuit with respect to the proper "similarly situated" standard applicable in selective enforcement claims. Some courts evaluate whether a comparator is similarly situated under the same standard used to evaluate comparators in "class of one" equal protection claims, while other courts apply a less demanding standard to selective enforcement claims. *See, e.g.*, *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *6–7 (E.D.N.Y. Feb. 24, 2014) ("Courts in this Circuit are split regarding the definition of 'similarly situated' in selective enforcement and class of one cases."); *Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury*, No. 09-CV-5195, 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) ("There appears to be some disagreement within the Circuit as to the definition of 'similarly situated' in 'selective enforcement,' as opposed to 'class of one,' equal protection claims."); *Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 694–95 (collecting and comparing cases).

In order to demonstrate that a plaintiff is similarly situated to a comparator under the stricter "class of one" standard, a plaintiff must show that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) ("[A] class-of-one claim requires a plaintiff to show an extremely high degree of similarity between itself and its comparators," (quoting *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010))). To prove that a plaintiff is similarly situated to a comparator under the less stringent standard applied in selective enforcement cases, a plaintiff must "identify

comparators whom a prudent person would think were roughly equivalent[, but] [p]laintiff[s] need not show an exact correlation between [themselves] and the comparators." *Abel v. Morabito,* No. 04-CV-7284, 2009 WL 321007, at *5 (S.D.N.Y. Feb. 10, 2009) (citations, alternations, and internal quotation marks omitted); *see also Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 696 (adopting and applying selective enforcement test, noting "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated . . . . the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result" and "[e]xact correlation is neither likely [n]or necessary, but the cases must be fair congeners") (internal quotation marks and citations omitted)). The selective enforcement standard is "slightly less stringent." *Mosdos Chofetz Chaim*, 815 F. Supp. at 696 (noting that a plaintiff need only show that it and the comparator are "similarly situated in all material respects" (internal quotation marks and citations omitted)); *see also Segreto*, 2014 WL 737531, at *7 (assuming *arguendo* that the "less stringent standard" controlled and applying that standard); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008) (same). However, even under the less stringent standard, "[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim [and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection claim." *Id.* at 698 (alterations in original) (quoting *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 31, 2010)). Here, the Court need not determine which standard applies, as Plaintiff sufficiently states a claim for equal protection under the stricter standard and therefore also satisfies the less stringent standard.

Plaintiff has identified EZ Pawn Corp. ("EZ Pawn") as a comparator with which it is similarly situated. (Am. Compl. ¶¶ 30–31.) Plaintiff states in its Amended Complaint:

> [b]y way of example, EZ Pawn Corp, a competitor of Gem, utilized Leads Online — up until 2011. After discontinuing their voluntary use of such service, however, they were immediately faced with harassment and heavy handedness by the NYPD and those actions quickly forced them to re-sign with Leads Online. Upon information and belief, after re-signing with Leads Online in 2012, EZ [Pawn] has never since been harassed by the NYPD.[7]

(*Id.*) Defendants argue that Plaintiff has not adequately provided a proper comparator, because, "[b]y its very nature, the use or non-use of Leads Online affects how pawnbrokers are treated. Pawnbrokers that use Leads Online are not subject to onsite inspections as their records can be inspected electronically. Thus, a pawnbroker that uses Leads Online is not similarly situated in all material respects," and cannot be a comparator to Gem, a pawn broker who does not use Leads Online. (Def. Mem. 18). Defendant contends that "EZ Pawn is not a comparator while using Leads Online, and when not using Leads Online, it was arguably treated the same as Gem if, what is referred to as the 'harassment and heavy handedness' allegedly faced by EZ Pawn included the conduct alleged by Gem in the connection with administrative inspections." (*Id.*) Defendants also argue that Plaintiff's equal protection claim fails because it did not "provide any information about the conduct in question or the attendant circumstances either before or after EZ Pawn used Leads Online," and, "[a]ccordingly there is no basis to determine whether the

---

[7] Additionally, Plaintiff submitted affidavits from EZ Pawn president, David Kiminsky, (Aff. of David Kaminsky, annexed to Decl. of Paul J. Solda ("Solda Decl.") as Ex. C) and from Joseph Buoninfante, senior manager of Quick Cash USA LLC, a New York pawnbroker chain, (Aff. of Joseph Buoninfante, annexed to Solda Decl. as Ex.D), in support of its argument that similarly situated pawnbrokers are not harassed so long as they use Leads Online. These affidavits fall outside of the four corners of the Amended Complaint and the Court therefore will not consider them in deciding the motion to dismiss. *See McCarthy v. Dun & Broadstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

circumstances giving rise to the conduct or the conduct itself is 'prima facie identical' to what is alleged by Gem."  (*Id.* at 18–19.)

Defendants' argument that EZ Pawn is not an appropriate comparator because it differs from Plaintiff in the exact way Plaintiff argues should be immaterial to Defendants' decision as to how to treat pawn brokers is unpersuasive, and the Court finds that Plaintiff has alleged enough facts to support a finding that EZ Pawn was similarly situated to Plaintiff.  As a preliminary matter, EZ Pawn and Gem are both New York City pawn brokers, and thus subject to the same unique regulatory scheme enforced by the NYPD.  Furthermore, the only difference Defendant claims exists between EZ Pawn and Plaintiff is the use of Leads Online — which Plaintiff argues is not rationally related to Defendant's treatment of pawnbrokers.  Indeed, that "the use or non-use of Leads Online affects how pawn brokers are treated," is the basis of Plaintiff's allegation that pawn brokers who do not use Leads Online are subject to selective enforcement of the administrative regulations and harassment from Defendants.  Because the difference between Plaintiff and EZ Pawn arises from Defendants' decisions and actions, and it is those actions on which Plaintiff bases this claim, Defendants cannot rely on the differential treatment alone to show that EZ Pawn and Plaintiff are not similarly situated.  *Cf. Martorelli v. Cossette*, No. 10-CV-236, 2012 WL 1067631, at *7 (D. Conn. Mar. 30, 2012) (finding that two pawn shops subject to same licensing authority were not similarly situated because the owner of one shop was arrested, an act which "[could ]not be attributed to defendant.").  The fact that EZ Pawn currently uses Leads Online does not require the conclusion that EZ Pawn is not a similarly situated business, as Defendants argue, as the nature of the businesses are still the same.  Even employing the more stringent "class of one" standard to determine whether EZ Pawn and Gem are adequate comparators, there is a question as to whether "no rational person could regard

the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy." *See Fortress Bible Church*, 694 F.3d at 222; *Bush v. City of Utica, N.Y.*, 558 F. App'x 131, 134 (2d Cir. 2014) (finding that plaintiffs who resided on a street known to be where poor persons resided, where the fire department had a policy not to enter into burning buildings on that particular street, had properly identified a similarly situated comparator by identifying people in the same city who did not live on that street).

Plaintiff has also put forth facts which demonstrate differential treatment against users of Leads Online. Plaintiff has alleged that EZ Pawn was, like Plaintiff, subject to harassment from the NYPD when it was not using Leads Online and that, unlike Plaintiff, once EZ Pawn joined Leads Online, the harassing treatment ceased. *See LaTrieste Rest.& Cabaret Inc. v. Vill. Of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (finding that a plaintiff which operated a cabaret successfully identified a similarly situated comparator in itself by alleging that prior to its use of topless dancers, the city never enforced its ordinance which prohibited cabarets from operating before 10 PM against the plaintiff, however, once the plaintiff began to use topless dancers, the city began to regularly enforce the ordinance against the plaintiff). Plaintiff has alleged facts sufficient to show an adequate point of comparison between Plaintiff and EZ Pawn by describing that EZ Pawn was similarly "faced with harassment and heavy-handedness by the NYPD," before using Leads Online and that "it has never since been harassed," since joining Leads Online. *See T.S. Haulers, Inc. v. Town of Riverhead*, 190 F. Supp. 2d 455, 462–63 (E.D.N.Y. 2002) (finding that the plaintiff properly identified similarly situated comparators where the plaintiff identified four other local developers who were granted rights to mine for sand on their parcels, while plaintiffs application for a permit to engage in the same activity was denied);

*Hamptons Bays Connections Inc. v. Duffy*, 127 F. Supp. 2d 364, 375 (E.D.N.Y. 2001) (finding that plaintiff real estate developer had identified a similarly situated comparator by identifying a another local real estate developer who had applied for the same exemptions as the plaintiff but whose application was granted while the plaintiff's was denied). Furthermore, accepting the factual allegations as true for the purposes of this motion, the Court also finds that the similarity in circumstances between EZ Pawn and Gem and the difference in treatment between the two after EZ Pawn joined Leads Online is sufficient to exclude the possibility that the Defendants acted on the basis of a mistake. The Court finds that Plaintiff has adequately pled facts that would support a finding that use of Leads Online is not a material difference rationally related to the adverse differential treatment alleged by Plaintiff, thus permitting a rational jury to conclude that EZ Pawn is "similarly situated" to Plaintiff for the purposes of Equal Protection analysis.

Given that Plaintiff has pled enough facts to move forward even under the more stringent "class of one" standard, the Court also finds that Plaintiff has alleged enough facts to support a finding that Plaintiff and EZ Pawn were similarly situated under the less stringent standard frequently applied to selective enforcement claims, that "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated" in all material respects. *See Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 696. Thus, the Court declines to grant Defendants' motion to dismiss on the grounds that Plaintiff has failed to identify an appropriate comparator to illustrate the selective treatment.

In addition to showing that "compared with others similarly situated, [the plaintiff] was selectively treated," an equal protection claim premised on selective enforcement also requires a showing that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of

constitutional rights, or by a malicious or bad faith intent to injure [the plaintiff]." *Martine's Serv. Ctr.*, 554 F. App'x at 35 (quoting *Zahra*, 48 F.3d at 683); *see also FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir.1992); *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1352 (2d Cir. 1994); *LeClair,* 627 F.2d at 609–10. Plaintiff here alleges that Defendants have "effectively singled out Gem from other pawnbrokers and secondhand dealers and have done so with malice and bad faith." (Am. Compl. ¶ 152.) Plaintiff further alleges that pawn brokers who choose not to use Leads Online are subject to additional onsite inspections for "administrative purposes," and that Plaintiff has experienced continual visits to its stores, warrantless searches, holds on jewelry, criminal summonses and over all harassment. (*Id.* ¶¶ 36–133.) Defendants raise no argument as to this element of Plaintiff's selective enforcement equal protection claim, instead relying on the fact that the NYPD is permitted to perform administrative inspections. The Court finds that Plaintiff's detailed description in its Amended Complaint of the actions taken beyond mere administrative inspections, including various in-store visits from the NYPD, statements made to Gem employees, subsequent requests for jewelry holds, and the seven misdemeanor summons received, (*see id.*), are adequate to demonstrate at the pleadings stage a malicious or bad faith intent to injure Plaintiff. The Court therefore finds that Plaintiff has stated a plausible claim for violation of the Equal Protection Clause and Defendants' motion to dismiss is, therefore, denied.

**III.    Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for reconsideration and

denies Defendants' motion to dismiss.

SO ORDERED:

_____
        s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2015
        Brooklyn, New York