UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------
GEM FINANCIAL SERVICE, INC.,
*d/b/a* GEM PAWNBROKERS,

                Plaintiff,                           **MEMORANDUM AND ORDER**
                                                                       13-CV-1686 (RPK) (RER)
      v.

CITY OF NEW YORK,

                Defendant.
-----------------------------------------------------------
RACHEL P. KOVNER, United States District Judge:

      After a two-week trial, a jury found City of New York liable for Fourth Amendment violations under 42 U.S.C. § 1983 and for malicious prosecution under New York law. The jury awarded plaintiff Gem Financial Service, Inc. $1,003,250 in compensatory damages. Verdict (Dkt. #179). Plaintiff has moved (i) to amend the judgment to include prejudgment interest pursuant to Federal Rule of Civil Procedure 59 (Dkt. #186) and (ii) for attorneys' fees and costs (Dkt. #206). For the reasons discussed below, plaintiff's motion for prejudgment interest is granted, and plaintiff's motion for attorneys' fees and costs is granted in part.

## BACKGROUND

      The Court assumes familiarity with the background and procedural history of this case, which is recounted here only as necessary to decide these motions.

      Plaintiff filed this lawsuit in 2013. Compl. (Dkt. #1). The Court granted in part and denied in part defendant's motion to dismiss, *Gem Fin. Serv., Inc. v. City of New York*, No. 13-CV-1686 (MKB), 2014 WL 1010408, at *1 (E.D.N.Y. Mar. 17, 2014) ("*Gem I*"), and granted in part and denied in part its motion for summary judgment, *Gem Fin. Serv., Inc. v. City of New York*, 298 F. Supp. 3d 464 (E.D.N.Y. 2018), *as amended* (June 27, 2018) ("*Gem II*"). After a trial on plaintiff's

1

remaining claims, the jury returned a verdict of $1,003,250 in plaintiff's favor on April 27, 2022, Minute Entry dated April 27, 2022. The award consisted of $1 million in compensatory damages for the unconstitutional searches of plaintiff's proprietary records; $1,500 for the unconstitutional seizures of plaintiff's merchandise and collateral; and $1,750 for malicious prosecution in violation of New York law. Verdict (Dkt. #179).

Defendants filed a motion for judgment as a matter of law and a new trial, (Dkt. #187), which the Court denied, Mem. and Order (Dkt. #211) ("*Gem III*").

Plaintiff filed a motion seeking prejudgment interest on the jury's award of $1,001,500 in damages resulting from defendant's unconstitutional searches and seizures. (Dkt. #186). Plaintiff did not seek prejudgment interest on the $1,750 that the jury awarded based on plaintiff's malicious-prosecution claim.

Plaintiff also filed a motion seeking $1,009,142 in attorneys' fees and $15,408.46 in costs. (Dkt. #206). This sum includes: (i) $856,747.50 in fees and $14,336.25 in disbursements billed by Paul J. Solda; (ii) $34,710 in fees billed by Michael Shapiro; (iii) $33,280 in fees and $593.29 in disbursements billed by Melissa Erwin; (iv) $76,542.50 in fees and $442.42 in disbursements billed by Joel Shafferman; and (v) $7,862 in fees and $36.50 in disbursements billed by Mark Kriss. Plaintiff also seeks an additional $21,200 in fees related to the preparation of its attorney-fee motion.

## DISCUSSION

For the reasons explained below, I grant plaintiff (i) prejudgment interest on damages awarded for unconstitutional searches and seizures, (ii) $529,414.75 in attorneys' fees, and (iii) $15,408.46 in costs.

I. **Prejudgment Interest**

I grant plaintiff's motion to amend the judgment to include prejudgment interest on the damages the jury awarded for unlawful searches and seizures. In a suit involving a federal right, the Court may grant prejudgment interest in its discretion, considering "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998) (citation omitted); *see U.S. Sec. & Exch. Comm'n v. Ahmed*, 72 F.4th 379, 403 (2d Cir. 2023) (quoting *Wickham Contracting Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 834 (2d Cir. 1992)).

On balance, these considerations favor prejudgment interest on the damages awarded for unlawful searches and seizures under Section 1983. The jury's findings established that defendant wrongfully denied plaintiff profits that plaintiff would have been able to use—and earn money from—during the period in which this lawsuit was pending. An award of prejudgment interest on those funds therefore serves interest in "fully compensat[ing]" plaintiff "for actual damages suffered." *Gierlinger*, 160 F.3d at 873. And since "'[t]he purpose of the [Section 1983 remedial scheme] . . . is to fully compensate individuals for harm suffered as a result of a constitutional violation," such an award serves the interests of the statutory scheme as well. *Jeanty v. City of New York*, No. 18-CV-5920 (KPF), 2021 WL 276553, at *8 (S.D.N.Y. Jan. 27, 2021) (quoting *Rao v. N.Y.C. Health & Hosps. Corp.*, 882 F. Supp. 321, 326 (S.D.N.Y. 1995)).*

---

*There is no indication that the jury already included prejudgment interest in the damages it awarded. "[W]hen a jury is not instructed to include [prejudgment interest] there is no presumption that a jury will act on its own to make this calculation." *Nat'l Commc'n Ass'n, Inc. v. Am. Tel. & Tel. Co.*, No. 92-CIV-1735 (LAP), 1999 WL258263, at *3 (S.D.N.Y. Apr. 29, 1999). Here, the jury was instructed to consider only "fair compensation for the loss, if any, that a plaintiff has suffered as a result of a defendant's actions." Trial Tr. 2427–29; *see Chandler v. Bombardier Cap., Inc.*, 44 F.3d 80, 83–84 (2d Cir. 1994) (finding that nothing in the expert testimony or jury instructions suggested to the jury that it include prejudgment interest in its damages award).

3

Giving weight to those interests, courts in this Circuit routinely award prejudgment interest on jury verdicts in cases in which "economic injury" means that a plaintiff was "deprived of money [it] would otherwise have earned but for the defendants' wrongdoing," *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 370–72 (S.D.N.Y. 2001). The Second Circuit has held in the Section 1983 context that when damages "represent compensation for lost wages, 'it is ordinarily an abuse of discretion *not* to include pre-judgment interest.'" *Gierlinger*, 160 F.3d at 873 (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993)). And while it has not articulated the same presumption for lost-profits damages—which may involve more uncertainties of proof—numerous courts in this Circuit have awarded prejudgment interest on such damages. *See Tretola v. County of Nassau*, No. 08-CV-3225 (DRH), 2014 WL 2866095, at *2 (E.D.N.Y. June 24, 2014) (finding that "a plaintiff may legitimately seek to recover the loss he suffered as a result of not being able to use his lost profits"); *Galloping, Inc. v. QVC, Inc.*, 27 F. Supp. 2d 466, 469 (S.D.N.Y. 1998) (granting prejudgment interest on portion of jury award attributable to lost profits); *Turley v. N.Y.C. Police Dep't*, 988 F. Supp. 675, 682 (S.D.N.Y.1997) (granting prejudgment interest on lost profits under Section 1983), *rev'd on other grounds at* 167 F.3d 757 (2d Cir. 1999).

While the somewhat approximate nature of the lost-profits analysis in this case is a countervailing consideration, it does not outweigh the interest in fully compensating the plaintiff. *See generally Gem III* at 20–25 (discussing damages evidence). The Second Circuit has instructed that "[t]he speculative nature of the damages in question will always be relevant to a sound decision on a consideration of whether prejudgment interest should be awarded." *Wickham Contracting Co.*, 955 F.2d at 836. But it has emphasized that "while the presence of 'abstruse inquiries' and 'difficult questions of proof' in the calculation of damages are factors to be considered carefully,

4

these problems must be considered together with other factors that may favor prejudgment interest." *Ibid.* Here, in the absence of other equitable considerations favoring defendant, the fact that the lost-profits analysis in this case involved difficult questions of proof does not by itself justify withholding prejudgment interest.

The prejudgment interest rate will be calculated by averaging the annual interest paid on a one-year United States Treasury bill during each of the past ten years. While district courts have discretion to determine what interest rate to use, *Chandler v. Bombardier Cap., Inc.*, 44 F.3d 80, 84 (2d Cir. 1994), "[c]ourts in this circuit 'uniformly have applied' the federal interest rate in awarding prejudgment interest," *Tretola*, 2014 WL 2866095, at *3 (citing *Rodriguez v. Express World Wide, LLC,* 2014 WL 1347369 (E.D.N.Y. Jan. 16, 2014), *report and recommendation adopted*, 2014 WL 1350350 (E.D.N.Y. Mar. 31, 2014)). And "[t]o account fairly for the considerable fluctuations in the Treasury bill rate, it is appropriate to calculate prejudgment interest according to the average rate over the period for which interest is to be awarded." *Rao*, 882 F. Supp. at 328; *see Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 214 (S.D.N.Y. 2001) (calculating the prejudgment interest rate by averaging the annual interest paid on a one-year United States Treasury bill during each of the past three years). Accordingly, the average annual interest paid on a one-year United States Treasury bill during each of the past ten years is an appropriate measure of prejudgment interest. That interest shall be paid for the period from the date this action commenced through the date of entry of judgment, compounding annually.

## II. Attorneys' Fees and Costs

Plaintiff is entitled to a total of $529,414.75 in attorneys' fees and $15,408.46 in costs.

In a Section 1983 case, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). There is no dispute that plaintiff was the prevailing party. I therefore must determine whether the

requested attorneys' fees are reasonable.  *Lilly v. County of Orange,* 910 F. Supp. 945, 949 (S.D.N.Y. 1996).  The applicant bears the burden to "demonstrate the reasonableness and necessity of hours spent and rates charged," *Kindle v. Dejana*, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018) (citation omitted), and "must submit adequate documentation supporting the requested attorneys' fees and costs," *Fisher v. SD Prot. Inc*., 948 F.3d 593, 600 (2d Cir. 2020).  This Circuit also requires contemporaneous billing records for each attorney who worked on the action.  *See Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011).

In determining reasonable attorneys' fees, the district court must consider the "lodestar figure based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate."  *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (citing *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989)); *Cruz v. Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994).  Factors that may inform whether a fee is reasonable include "[t]he time and labor required" in litigating a case, "[t]he novelty and difficulty of the questions" involved, "[t]he skill requisite to perform the legal service properly," "[t]he customary fee for similar work in the community," "[t]he experience, reputation, and ability of the attorneys," "[t]he . . . results obtained," and "[a]wards in similar cases."  *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974), *abrogated on other grounds, Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Lilly v. City of New York*, 934 F.3d 222, 233 (2d Cir. 2019) (explaining that the *Johnson* factors "remain important tools for helping district courts calculate the lodestar").  At the end of the day, district courts have "considerable discretion [to] . . . bear in mind *all* of the case-specific variables" in evaluating reasonable fees.  *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original)).

A.      **Contemporaneous Billing Records**

Contrary to defendant's arguments, attorneys' fees are not appropriately denied on the theory that plaintiff's counsel did not submit contemporaneous billing records. Mem. in Opp. 8–10 (Dkt. #207).

The purpose of the contemporaneous-records requirement is to prevent "the submission of *reconstructed* records, where no contemporaneous records have been kept." *Lenihan v. City of New York*, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (emphasis in original). Thus, so long as attorneys kept contemporaneous billing records, they may submit transcriptions of those records to the court in lieu of the records themselves. *Ibid.* (finding submission of billing records "in a form convenient for the Court" is "no less contemporaneous"); *see Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 149 (2d Cir. 2014).

Here, each of plaintiff's attorneys provided transcriptions of their billing records, which appear to be no different than those "[t]he Court routinely receives . . . from firms whose billing records are maintained in computers." *Lenihan*, 650 F. Supp. at 824. As for Mr. Solda, whose billing practice involves converting his handwritten billing records ("Blumberg-Excelsior chits") into electronic bills for the client, Solda Decl. ¶ 4 (Dkt. #206–2), I am satisfied that his submitted bills accurately reflect his contemporaneously maintained records. Mr. Solda submitted two sworn declarations averring that he kept contemporaneous billing records. *Ibid.*; Solda Decl. ¶ 2 (Dkt. #208–1). He also submitted examples of the paper "Blumberg-Excelsior chits" he used to record his time contemporaneously. (Dkt. #208–2). Further, the bills that Mr. Solda generated based on these paper records were duly paid by his client in the ordinary course. Wilen Aff. ¶ 3 (Dkt. #208–3).

Based on all the documents submitted to support this motion, the bills plaintiff's counsel submitted satisfy the contemporaneous-records requirement.

B.     **Reasonable Hourly Rates**

Plaintiff requests hourly rates of $275–$550 for Mr. Solda, $650 for Mr. Shapiro, $400 for Ms. Erwin, $425 for Mr. Shafferman, and $425 for Mr. Kriss.  For the reasons explained below, Mr. Solda's reasonable hourly rate is $350, Mr. Shapiro's is $350, Ms. Erwin's is $250, Mr. Shafferman's is $350, and Mr. Kriss's is $300.

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Lilly*, 934 F.3d at 231 (quoting *Arbor Hill*, 522 F.3d at 190).  Generally, courts "use the hourly rates employed in the district in which the reviewing court sits," *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (citation omitted), "for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Gierlinger*, 160 F.3d at 882.  Courts in this district have recently "set rates in Section 1983 cases at approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Murray v. Marshall*, No. 15-CV-599 (RPK) (PK), 2020 WL 5899851, at *2 (E.D.N.Y. Mar. 16, 2020), *report and recommendation adopted as modified*, 2020 WL 3819075 (E.D.N.Y. July 8, 2020); *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017).  In civil rights cases, "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in the field." *Hugee v. Kimso Apts. LLC*, 852 F. Supp. 2d 281, 299 (E.D.N.Y. 2012); *see, e.g.*, *Luca v. County of Nassau,* 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) (awarding $400 per hour to partner with over 25 years of experience "specializing in plaintiffs-side civil rights cases," whose "peers recognize him as an authority in his specialty, as evidenced by his numerous teaching and speaking engagements," and who has handled roughly 180 civil rights

cases in the Eastern District of New York alone).  While "the amount actually paid to counsel by paying clients" provides evidence of the market rate, it is not dispositive, *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CIV-0121 (JPO) (JCF), 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014), in part because the availability of fee-shifting may lead a litigant to accept a rate structure "that the market would not otherwise bear," *Arbor Hill*, 522 F.3d at 184.

      A reasonable hourly rate for Mr. Solda is $350 per hour.  Since Mr. Solda is the lead counsel for the case, "it is fair to consider both how this case was managed from its inception and how the trial itself was conducted in determining a reasonable hourly rate for his work." *Liu v. Little Saigon Cuisine Inc.*, 18-CV-2181 (RPK), 2023 WL 1785544, at *3 (E.D.N.Y. Feb. 6, 2023) (quoting *Lin v. La Vie En Schezuan Rest. Corp.*, No. 15-CV-9507 (DF), 2020 WL 1819941, at *4 (S.D.N.Y. Apr. 9, 2020)).  Although Mr. Solda has more than 30 years of legal experience, Solda Decl. ¶ 2, and his client paid him based on his requested rates through at least April 30, 2022, *id*. at ¶ 6, I cannot justify a rate of more than $350 per hour because "[t]he trial was very rough in terms of demonstrating [counsel's] ability to formulate questions according to the rules of evidence," *Hui Luo v. L & S Acupuncture, P.C.*, No. 14-CV-1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015), *aff'd*, 649 F. App'x 1 (2d Cir. 2016).  Without belaboring the point, counsel "improperly asked a litany of leading questions to plaintiff's own witnesses," *Gem III* at 29; *see, e.g.*, Tr. 774–75 (sidebar discussion), the witness examinations on behalf of plaintiff did not have the level of focus and organization expected in federal court; and counsel repeatedly made arguments that that flouted the Court's *in limine* rulings, *Gem III* at 29; *see, e.g.* Tr. 2058–62 (sidebar discussion).  Similarly, the written work product on behalf of plaintiff was not of a quality that could support more than $350 per hour for lead counsel.  For instance, in opposing defendant's motion for a new trial or for judgment as a matter of law following a multi-week jury trial, counsel

9

submitted a brief that contained no summary of the evidence at trial and cited the trial record only in four footnotes. Mem. in Opp. 11 n.12, 14, n.18, 16 n.24, n.25 (Dkt. #201). As a result, the brief was of extremely limited value in determining whether sufficient evidence supported the jury's verdict.

In addition, in support of the fees he requested, Mr. Solda points to only a handful of Section 1983 cases that he has litigated. *See* Solda Decl. ¶ 3. In one of those cases, the court denied his request for a $490 hourly rate, citing the "abysmal quality" of his legal work and a "lack of experience with Section 1983 actions against police officers." *5 Borough Pawn, LLC v. Marti*, No. 08-CV-3837 (CM), 2011 WL 13263169, at *4–5 (S.D.N.Y. July 22, 2011); *cf. Lawson ex rel. Torres v. City of New York*, No. 99-CV-10393 (LAP), 2000 WL 1617014, at *4 (S.D.N.Y. Oct. 27, 2000) (awarding $225 per hour to an attorney with "extensive litigation experience" but who had not tried a Section 1983 action before). Considering the totality of the record, $350 per hour is a reasonable hourly rate for Mr. Solda.

A reasonable hourly rate for Mr. Shapiro, partner of Carter Ledyard & Millburn, LLP, is $350 per hour. The $650 per hour Mr. Shapiro seeks is far outside the bounds of "$300 to $450" hourly rate courts in this district typically allow for law firm partners. *Murray*, 2020 WL 5899851, at *2. Mr. Shapiro appears to have only played an advisory role in the case—his work was largely limited to consulting with co-counsel and reviewing various documents. *See, e.g.*, Shapiro Invoice 8 (Dkt. #206-6). Thus, while Mr. Shapiro has 50 years of legal experience, Shapiro Decl. ¶ 2 (Dkt. #206–5), and his client paid his bills in full, *id*. at ¶ 5, his peripheral contributions do not warrant an award at the highest end of the range. Accordingly, I find that $350 per hour is a reasonable hourly rate for Mr. Shapiro.

A reasonable hourly rate for Ms. Erwin, now counsel at Mr. Shapiro's law firm, is $250 per hour. Ms. Erwin was an associate during the period she worked on this case. *See* Shapiro Decl. ¶ 3. She is accordingly awarded a rate similar to those awarded for senior associates with comparable levels of experience. *See Little Saigon Cuisine Inc.*, 2023 WL 1785544, at *3 (awarding a rate of $200 per hour for a senior associate with significant experience in the relevant litigation field).

A reasonable hourly rate for Mr. Shafferman, partner of Shafferman & Feldman LLP, is $350 per hour. Mr. Shafferman was retained in early 2022 as co-counsel to "second seat" Mr. Solda at trial, where he led the presentation of plaintiff's damages case. Shafferman Decl. ¶ 3 (Dkt. #206–7). Mr. Shafferman avers that plaintiff has paid his law firm $31,115.00 of the $76,986.92 he billed. *Id.* at ¶ 6. While the $425 per hour rate Mr. Shafferman requests is within the range of typical hourly rates for partners, it is at the high end of the range, and is awarded to "expert trial attorneys." *Hugee*, 852 F. Supp. 2d at 299. Here, considering Mr. Shafferman's performance at trial, a rate closer to the lower-middle of the range for partners is appropriate.

A reasonable hourly rate for Mr. Kriss, partner of Kriss, Kriss & Brignola LLP is $300, at the low end of the range of rates for law firm partners. Mr. Kriss was retained to assist with plaintiff's post-trial motions. Kriss Decl. ¶ 3 (Dkt. #206–8). But as explained above, plaintiff's post-trial briefing lacked the record citations necessary to aid the Court in addressing defendant's post-trial motions. *See* Mem. in Opp. (Dkt. #201). A rate of $300 per hour is therefore more reasonable.

### C.  Reasonable Hours Expended

Plaintiff's request for compensation based on 2,132.65 total hours expended on this case is unreasonable and requires reduction.

11

"In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999), as well as time entries that "are vague or otherwise inadequate to enable the court to determine the reasonableness of the work performed." *Wen v. Hair Party 24 Hours Inc.*, No. 15-CV-10186 (ER) (DF), 2021 WL 3375615, at *14 (S.D.N.Y. May 17, 2021) (citing *Hensley*, 461 U.S. at 433), *report and recommendation adopted*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021). "[A] reduction is warranted where the hours billed are disproportionate to the quantity or quality of the attorneys' work." *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12-CV-9190 (GBD) (AJP), 2013 WL 6481354, at *9 (S.D.N.Y. Dec. 3, 2013), *report and recommendation adopted*, 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014). In determining the reasonable hours expended, "the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985). To calculate reasonable hours expended in litigating a case, "[a] district court may . . . use a percentage deduction as a practical means of trimming fat from a fee application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citation omitted).

It is perhaps unsurprising that the total hours plaintiff's attorneys expended on this case numbered in the thousands. After all, this case spanned over a decade of zealous advocacy from both sides, which culminated in a 12-day trial and testimony from more than a dozen live witnesses.

But the total hours reported are "disproportionate to the [] quality of the attorneys' work" in this case, *Lane Crawford LLC*, 2013 WL 6481354, at *9, where counsel's advocacy suggested

12

a lack of sufficient preparedness and the written work product was of limited utility to the Court. Because counsel's overall quality of work throughout this case was disproportionate with the hours expended, an across-the-board 20% reduction in hours for each attorney is warranted. *See Gesualdi v. Cirillo*, No. 09-CV-4570 (KAM) (JMA), 2011 WL 666196, at *5 (E.D.N.Y. Jan. 3, 2011), (reducing the hours expended because the "total hours billed on this matter do not reflect the quality of work submitted to the Court"), *report and recommendation adopted*, 2011 WL 666197 (E.D.N.Y. Feb. 14, 2011).

In addition, the hours expended by Messrs. Solda, Shapiro, and Shafferman warrant a separate 10% reduction in light of the numerous vague time entries they submitted. For example, on April 2, 2022, Mr. Solda billed for five hours of "general trial preparation" without further elaboration. Solda Invoice 136 (Dkt. #206–3). On September 11, 2019, Mr. Shapiro billed one hour "prepar[ing] for Friday" and 2.4 hours "prepar[ing] for court" the next day. Shapiro Invoice 28. And on April 6, 2022, Mr. Shafferman reported spending three hours "[m]eeting with Cary P to prepare for trial." Shafferman Invoice 5. These entries "are too vague to allow for meaningful judicial scrutiny." *Hair Party 24 Hours Inc.*, 2021 WL 3375615, at *23; *see, e.g.*, *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 216 (E.D.N.Y., 2019) (finding entries vague when "[counsel] billed at least 7.8 hours of phone calls with Plaintiff, opposing counsel, or other unidentified individuals without explaining the nature or subject of the phone call"); *Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*, No. 10-CV-389 (SMG), 2015 WL 7454601, at *7 (E.D.N.Y. Nov. 23, 2015) ("There are also some vague entries, such as those for time spent on document review, consultations, and phone calls, which do not contain further elaboration . . . . [V]ague descriptions make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees."). A larger reduction, though, is not

13

warranted because the majority of the time entries "contain[ed] enough specificity to determine whether the time expended on the activity [was] reasonable." *Nnebe v. Daus*, No. 06-CV-4991, 2022 WL 612967, at *7 (S.D.N.Y. Mar. 1, 2022). Similarly, I do not reduce the hours of Ms. Erwin and Mr. Kriss because their time entries were sufficiently detailed.

### D.  Degree of Success

While a number of plaintiff's claims were dismissed at various points during this litigation, the time plaintiff's counsel expended on those claims is compensable. When a plaintiff has achieved partial success but "the plaintiff's claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for [work done on] unsuccessful claims as well as successful ones." *Raja v. Burns*, 43 F.4th 80, 88 (2d Cir. 2022) (internal quotation marks omitted) (quoting *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004)). The Court should focus its inquiry on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the [reasonable fee] amount.").

Here, a reduction in hours for limited success is inappropriate because the failed claims were "inextricably intertwined" and "involved a common core of facts" with the successful claims. *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir. 1996) (quoting *Hensley,* 461 U.S. at 435); *see also Anderson v. City of New York*, 132 F. Supp. 2d 239, 244 (S.D.N.Y. 2001) (refusing to reduce hours spent on unsuccessful claims for unlawful searches and intentional infliction of emotional distress because these claims were "inextricably intertwined" with successful claim for excessive force). Although plaintiff's equal protection and federal malicious prosecution claims were dismissed before trial, those claims were predicated on the same set of facts and

14

circumstances as the successful claims, namely defendant's unlawful searches and seizures of plaintiff's properties. Moreover, counsel effectively vindicated plaintiff's constitutional rights by securing substantial damages for the Section 1983 claims. Therefore, no reduction is warranted based on the dismissal of certain claims.

E.     **Fee Application**

Plaintiff separately requests $21,200.00 in attorney's fees that cover time spent preparing this motion. Solda Decl. ¶ 6 (Dkt #208-1). Plaintiff is entitled to an award of attorneys' fees "'for time reasonably spent in preparing and defending' the fee application." *Balu v. City of New York*, No.12-CV-1071 (KPF), 2016 WL 884666, at *9 (S.D.N.Y. March 8, 2016) (quoting *Weyant v. Okst,* 198 F.3d 311, 316 (2d Cir.1999)); *see Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 171 (W.D.N.Y. 2005) (noting that "[p]revailing parties are generally entitled to attorney's fees for work spent in preparing and defending a motion for attorney's fees"). Courts have discretion in awarding attorney's fees for time spent filing a fee application, *Feltzin*, 393 F. Supp. 3d at 217, and evaluate the hours expended "in the same manner as the costs of litigating the case," *John v. Demaio*, 15-CV-6094 (NGG) (CLP), 2016 WL 7469862, at *11 (E.D.N.Y. Mar. 18, 2019).

As with the fees requested for litigating this case, I reduce the hourly rate of Mr. Solda to $350 per hour. *See Costa v. Sears Home Improvement Prod., Inc.*, 212 F. Supp. 3d 412, 427 (W.D.N.Y. 2016) (awarding fees for time spent preparing the supplemental fee motion but reducing hourly rate requested to be the same as those the court awarded for the litigation). And because plaintiff's briefs in support of this motion were laden with errors and of limited utility, I find that Mr. Solda could not have reasonably expended 38.40 hours on them. Consequently, I reduce the hours expended by 20 percent.

15

F. **Final Calculation**

As explained above, the Court finds that Mr. Solda's reasonable hourly rate for work on this case is $350, Mr. Shapiro's is $350, Ms. Erwin's is $250, Mr. Shafferman's is $350, and Mr. Kriss's is $300. The Court then applied a 20 percent across-the-board reduction to the hours expended by each attorney, and additionally applied a 10 percent reduction to the hours expended by Messrs. Solda, Shapiro, and Shafferman. Those calculations yield the following fees:

| Attorney | Reasonable Hourly Rate | Hours (Actual) | Hours (20% reduction) | Hours (30% reduction) | Reasonable Fees |
|---|---|---|---|---|---|
| Paul J. Solda | $350.00 | 1797.45 | | 1258.215 | $440,375.25 |
| Michael Shapiro | $350.00 | 53.4 | | 37.38 | $13,083.00 |
| Melissa Erwin | $250.00 | 83.2 | 66.56 | | $16,640.00 |
| Joel Shafferman | $350.00 | 180.1 | | 126.07 | $44,124.50 |
| Mark Kriss | $300.00 | 18.5 | 14.80 | | $4,440.00 |
| Total: | | | | | $518,662.75 |

In addition, the Court applied Mr. Solda's $350 hourly rate and a 20 percent reduction to the fees requested for preparing this fee application, resulting in the following fees:

| Attorney | Reasonable Hourly Rate | Hours (Actual) | Hours (20% reduction) | Reasonable Fees |
|---|---|---|---|---|
| Paul J. Solda | $350.00 | 38.4 | 30.72 | $10,752.00 |

Accordingly, the total reasonable fee in this case is $529,414.75.

16

### G. Costs

Costs "normally include[] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)). Plaintiff seeks $15,408.46 in transcript, filing, travel, photocopy, and mailing costs related to this action. *See, e.g.*, Solda Invoices. Defendant does not object to this figure. After reviewing the submitted invoices, I find that the $15,408.46 is a reasonable amount of costs to award plaintiff in this action.

### CONCLUSION

Plaintiff's motion for prejudgment interest is granted. Plaintiff is entitled to prejudgment interest on the $1,001,500 in damages awarded on plaintiff's unlawful search and seizure claim, calculated by averaging the annual interest paid on a one-year United States Treasury bill during each of the past ten years, and paid for the period from the date this action commenced through the date of entry of judgment.

Plaintiff's motion for attorneys' fees and costs is granted in an amount of $529,414.75 in attorneys' fees and $15,408.46 in costs.

SO ORDERED.

        */s/ Rachel Kovner*
        RACHEL P. KOVNER
        United States District Judge

Dated: September 8, 2023
      Brooklyn, New York